The next case today is Dion Fincher v. Town of Brookline, appeal number 21-1281. Attorney Ames, please introduce yourself for the record and proceed with your argument. May it please the court, Brooks Ames for Dion Fincher. May I reserve two minutes for rebuttal? Yes, you may Mr. Ames. Dion Fincher and his doctor made a simple request to Town of Brookline. They asked that Fincher be allowed to work his labor job with no heavy lifting restrictions, but with a limitation on the number of times a week he was assigned to throw trash. Fincher and his doctor agreed he could do all the other heavy lifting required of a laborer, laying concrete, road work, moving sandbags, but after two shoulder injuries throwing trash, he needed a reprieve from everyday trash throwing. Nothing in Fincher's job description specifically called for him to work on the back of a garbage truck or even to work in sanitation. He was an all-purpose laborer for the highway and sanitation department, not a garbage man. The Town denied Fincher and his doctor's request. It would not allow him to throw trash only three times a week. As a result, yes. With your short time, eight minutes on direct, you might want to assume the panel's familiar with the facts. Yes, your honor. Let me see if I can clarify a couple things. This is an equal protection claim, not an ADA claim. Yes, your honor. And for an equal protection claim, I don't think you've pointed us in your brief, although I may have missed it, so I'm asking you any direct evidence of racial discrimination. In the sense of comments or the like by decision makers. So you're trying to do it then through a comparator. You're trying to say that we can infer discrimination because a comparable white person was treated differently than he was. Yes, your honor. And that's the next segment of my prepared argument. I'll focus on that, keeping in mind our circuit's definition of what a comparator need be. Yes, your honor. At the same time that Fincher was being denied his request, Fincher's colleague on the garbage truck, KG, faced less resistance. When he ran into a recurring health problem that made it necessary for him to reduce his time on the garbage truck, KG had a drinking problem. He appeared intoxicated one day at town hall, so intoxicated the police were called and he was taken into protective custody. Doesn't that immediately raise a comparator problem? I mean, he has a very different kind of issue. He does not have the physical weight restriction that your client has. He has a drinking problem. It can be addressed in a very different way. Doesn't that immediately raise a comparator issue? Your honor, I can see there's a distinction, but I'd contend that it's a distinction without a difference. The bottom line for KG was that, like Mr. Fincher, he needed less time on the garbage truck, and he got it. Mr. Fincher did not, and his accommodation was for health reasons. He admitted that in his deposition. The fact that the town did not put Mr. KG through the same sort of reasonable accommodation procedure doesn't change the fact that that's essentially what they did in practice. Four minutes remaining. But couldn't KG drive trucks, or at least non-commercial trucks? He could drive trucks. He said that he drove pickup trucks and he drove the small packer truck, but he was not driving, according to him, in his sworn testimony in his deposition, he was not driving the trucks that require a commercial driver's license. So, he could not continue to be in sanitation as he had been prior to his health issues. So, we contend that this is a valid comparator. KG is a valid comparator. When he got into trouble and needed to save his job, the decision makers of the town of Brookline accommodated him. By contrast, when Mr. Fincher needed some help, he was denied help. Mr. Fincher, as you know, Mr. Fincher is black. KG is white. So, a reasonable inference that a jury could draw there is that KG is getting a break because he's white and Fincher is not getting the break because he's black. So, weren't there periods of time when your client did do other kinds of work? He was brought back and he would be doing lawn work and just various types of cleanup duties that did not require him to be on the back of a garbage truck. Did they not accommodate him in that way for certain periods of time? Yes, your honor. They did accommodate him for short periods of time as what I think they would call light duty. But the key point here is that Mr. Fincher was capable of doing more than light duty lifting, but the town chose not to take him up on that offer. And their contention essentially was that he was a garbage man, that he had to be capable of throwing trash every day of the week. And that simply does not comport with the record or his job description or the way the town actually conducted business. The town had set it up so that the only people who were supposed to be assigned to the garbage truck could also drive the garbage truck so that you wouldn't have one person doing all the driving, one person doing all the throwing. But Mr. Fincher would be assigned to the garbage truck day after day for some months. And not because it was in his job description, but because that's what the town in its prerogative felt like doing. But did you have a 30-pound weight restriction too, lifting restriction? So the way this developed, your honor, is the doctor whose deposition is in the record was trying very hard with Mr. Fincher to get him back to work. And the key obstacle he thought was this heavy lifting. But the doctor cleared him to do the heavy lifting. But even after Mr. Fincher was cleared to do the heavy lifting, the town refused to put him back full-time on the job unless he could throw trash on the packer truck more than three times a week. When that became clear that the town was not going to bend on that, the doctor relented and said, I'm going to put a 30-pound restriction on you. That led to Mr. Fincher being fired, but it also gave him the opportunity, we can see, to get some benefits, some disability benefits. So that's how that played out. What about the, excuse me, the evidence that when your client was terminated, it was part of a process where five workers were terminated for various physical injuries, four of whom were white. And I guess the point being that even at that juncture, there was no racial difference in the way that employees with a physical limitation were treated. How do you reconcile that evidence with your claim that your client was treated differently because of race? The way that I would reconcile it, Your Honor, is that there's no evidence that those white employees were in the same shoes as Mr. Fincher. In other words, there's no evidence that those white employees who were fully disabled were capable, as Mr. Fincher was, of doing the labor job. He was capable of doing the labor job. His doctor and his physical therapist, I mean, he was strong, able to lift heavy weights. He just couldn't do that one particular task. And there's no evidence that those white employees were in the same shoes as Mr. Fincher in that regard. Thank you, Mr. Wright. Does anyone have any more questions for Mr. Ames? Mr. Ames, thank you. We'll hear you again on your rebuttal. At this time, Mr. Ames, please mute your audio and video. Mr. Podolsky, please begin by introducing yourself on the record. Thank you, Your Honors. Joseph Podolsky for the appellee, the Town of Brookline, and may it please the court. I did intend to get in again to get into what standard applies to this case, but it was seen because of the briefing of the appellant, where there were many claims that the Imperator standard didn't apply to his equal protection claim. I'm not going to do that because it appears that the appellant has conceded that that equal protection standard that has been announced time and time again does actually apply to his claims. So, I want to address a few points that the appellant's counsel just raised. The most glaring of which is that he continues to say Mr. Fincher was capable of doing his job, Mr. Fincher was capable of doing his job, ignoring the ultimate reality that led to the termination, which was that he applied for a disability retirement. And when he applied for a disability retirement, he certified with a doctor's independent medical examination that he was incapable of doing his job specifically because he was incapable of pushing, pulling, lifting, grasping 15 pounds or more I understood the appellant to be saying that the town took the position, despite the absence of any reference to this in the job description, despite the fact that other individuals similarly classified as laborers did other kinds of work, the city took the position that he could only do one job. And that was to work on the back of a garbage truck and repeatedly lift, I guess, garbage cans that were quite heavy and that by having to do that over and over again, he was going to re-injure himself. But that's the job that he was supposed to do. And if he couldn't do that specific job, they did not want him to continue to be in the workforce. Is that not a fair characterization of the position that the town took? I don't think it is, your honor. Kevin Johnson and Andrew Papasturgeon, the commissioner and director, were deposed in the case. They explained, without regard to anyone's race, that all employees of the DPW have to be capable of performing all the essential functions of their job in order to serve the needs of the DPW. That applied across the board to everyone. The record showed that. But then as to Mr. Fincher, he was a laborer. Actually, one other thing. Attorney Ames suggests that the town set it up so that only people working the garbage truck, that the people that regularly work the garbage truck could also drive. That's also true. The goal was to have whomever was working the truck have a CDL so that they could rotate, if needed, between driving and throwing. But the way that it works is when there's a need to backfill because there's either more trash or there's people are calling out or whatever the case may be, where there's an operational need that that wasn't required to throw trash all the time, every day, as part of his job. That was never the position of the town. The position was that in order to be employed as a laborer, which is a position that doesn't hold a CDL, you need to be capable of performing all of the essential functions of the job at any time so that the department could serve its operational needs. Yes. I'm sorry, I thought there was a question. Let me ask you a question. It's kind of procedural. Shouldn't it go to the jury and not to the court to determine that KG and Fincher are or are not similarly situated based on the record? Again, is that a matter that should go to the jury? I don't think so, Your Honor. The case law makes clear that the comparison needs to be someone who relates in all relevant aspects. And that means that the performance is the same, the job qualifications the same, the conduct at issue is the same, without any differentiating or mitigating circumstances. I'm sure there could be cases where it could be a jury question. This isn't one of them. KG wasn't accommodated. KG showed up at Town Hall, according to the reports in the complaint, intoxicated, was put in a program for alcoholism, and subsequently, subsequent to completing that program after a time, had applied for a different job within the that he had made. He specifically applied for a different job. And he testified to his reasoning, and his reasoning was because I don't want to throw trash in here. But on the summary judgment context, the test is, are there genuine issues of material facts? So that's where my question is geared. You're saying that based on that record, the judge can decide there's no genuine issues of material facts because they're not similarly situated, and that shouldn't go to the jury. That's your answer? Well, it's not a factual, the parties are not disputing the facts. Four minutes remaining. The question is, the question is not a factual one. The question is, is, was KG performing the same job? No. Did they have the same qualifications? There's no disputed fact that they didn't. Was KG even accommodated? No. That's, the parties don't actually accommodate it. Instead, what my brother argues and what the appellant argues is that we should just disregard the reality of the evidence and let a jury do the same thing, and suggest that there was some sort of a reasonable accommodations process here. That's not the case. KG was not accommodated. KG didn't have the same qualifications. KG didn't have the same injury. There's nothing that makes him a comparator to Mr. Fincher in this case. Is the job that KG ended up doing a job that the plaintiff could do? No, your honor. It required a CDL, which KG continued to maintain. And when KG was put in that position, he had no restrictions. There's a few other things I'd like to address my remaining time. The first is that over the appellant's career, he was accommodated multiple times. So he injured his right shoulder. He was accommodated. He was put on temporary modified duty for a matter of months. He was given duties that didn't require any lifting, including no sanitation. That accommodation actually happened three times over the course of really a three to four year working career. The last time, and the time that the appellants point to, was March 2013 to focus us in on the specific time period. The appellant was out on injured leave, and the medical documentation on March 22nd, 2013 said he had a 30 pound lifting restriction of indefinite duration. That was the last date upon which he actually worked. Counsel, I thought, and this I guess is disputed, I thought the argument is that the doctor reluctantly imposed that restriction once it became clear that the town for the appellant to return to work would have to go back to the back of a garbage trunk and lift these heavy garbage cans repeatedly. Given that insistence, the doctor only then imposed this 30 pound restriction. Isn't that the way it played out? No, your honor. The weight lifting restrictions came up repeatedly throughout Mr. Fincher's career. In 2012, I thought opposing counsel said that the doctor was not going to impose that restriction as long as the appellant could be assured that he would not have to do day after day after day. When the town refused to grant that accommodation, the doctor said, well, I guess I have no choice. I've got to impose this kind of... I'm not hearing this part of the question. I apologize. Sorry. The last thing I heard was when the town refused. Yeah, when the town refused to accommodate him by assuring him he would not have to go back to daily lifting of these heavy garbage cans, only then did the doctor impose this 30 pound restriction that then became so problematic for the town. That's what I understand appellant to saying. Is that not correct? That's not correct. It's not a matter of factual dispute. The record shows that comparing the two factual statements, 56.1 statements, he received a 30 pound restriction in 2012. He then in March 22nd, this is what I was dialing us in on, 2013, he received another 30 pound restriction. That was the last month in which he worked. He went out of work on that restriction. Then on April 26th, 2013, the doctor shared a different restriction saying that he shouldn't be assigned to trash more than two or three times per week. So what happened was so that they could have that dialogue. Then what happened next is that meeting never occurred because the appellant applied for accidental disability retirement. He went out on the 30 pound restriction. His doctor changed the restriction to not being assigned to trash more than two or three times per week. The commissioner tried to schedule a reasonable accommodations meeting. The appellant's response was to not go to that reasonable accommodations meeting, but to instead apply for disability retirement. When he applied for disability retirement, he hadn't been working. There hadn't been a meeting, but not because of the commissioner's lack of effort. It was because he applied for that retirement and then he put in medical documentation that actually said it's no longer a 30 pound restriction. It's now a 15 pound restriction and it's indefinite. That was the fact pattern that took place. So March, the first restriction, then the doctor trying to work with the town, then the town trying to work with Mr. Fincher, then without agreeing to even go to that reasonable accommodation meeting, Mr. Fincher getting additional medical documentation that made it an even greater physical restriction. That was the fact pattern and it's not disputed if we look and compare the 256.1 statements. Thank you. Would you say that from your argument that the fact that he got disability and requested it and got it, that would be sort of some of his claims? It's a factual estoppel position. Yes, your honor. He's taking the factual position that he's physically incapable of performing the job and that was the basis upon which he was granted a permanent disability retirement because of medical documentation that he submitted, which is what I just went through. Thank you. Thank you, Arsene. At this time, if attorney Ames would unmute his audio and video, he has a two minute rebuttal. He can begin by reintroducing himself on the record. May it please the court, Brooks Ames for Dion Fincher. With regards to the record, I just asked the court to look at it carefully. I think both sides may be cherry picking aspects of the record. I think the way that you articulated the chronology is correct. Mr. Fincher and his doctor did work to try to identify a way that Mr. Fincher could continue to work full duty lifting and it was only after that was rejected by the top decision makers in the DPW that that 30 pound restriction was imposed and ultimately leading to Mr. Fincher first being fired and then only later being able to obtain an accidental disability benefit. But the one preceded the other. One point that hasn't come up that I'd like to raise is that the issue of the comparator, I contend that that ought to be looked at as the whole case ought to be looked at under the McDonnell Douglas framework. That we're not necessarily, because it's an equal protection claim, put in that equal protection framework as regards to comparators. As in any discrimination claim under McDonnell Douglas, the jury would be allowed to infer discrimination from a broad array of facts and those would include whether the jury determined that the claim that Mr. Fincher was fired for not being able to physically do the job was a pretext. The jury would be allowed to consider that. The jury would also be allowed to consider, as it does in other Title VII cases where the McDonnell Douglas framework applies, the atmosphere within the workplace, the larger atmosphere, the history of the town's or the employer's history with regards to equal employment. In this case, there was a voluminous record that was put in that the court, the magistrate judge, ultimately characterized as tending to show that the town had a history of discrimination, that there was discrimination within the DPW, that it tended to show that Mr. Fincher at times had been the brunt of that discrimination. There was reported testimony that Mr. Fincher's union representative had said that the N-word is trying to buck the system. I think you just made an important point. The district court seemed to your claim of discrimination required proof of comparators, individuals who were comparable in all relevant senses and yet were treated differently because of their roles. You're saying that was an error of law by the district court to take the position that you had to be able to show that those comparators were part of this case, and in the absence of that, your claim would fail? Are you saying that was an error of law? Well, it would have been if the district court had done that. I'm not sure that's what the district court did. I think the district court analyzed it both ways and determined that it or argued that the court had erred by not deeming that evidence, that historical evidence, that evidence of racial discrimination in the town and within the DPW as relevant to Mr. Fincher's claim. I think the court ought to have considered that and found it relevant. Indeed, it ought to help tip the scales towards denying summary judgment. Thank you, Mr. Ames. Thank you to both counsel for these arguments. Thank you. That concludes the argument in this case. Attorney Ames and Attorney Podolsky, you should disconnect from the hearing at this time.